In the Matter of the Application of AUGUST BECK, Appellant, for a Peremptory Writ of Mandamus against THE BOARD OF SUPERVISORS OF THE COUNTY OF ERIE, Respondent.

1. SHERIFF OF ERIE COUNTY — DISBURSEMENTS. The act (L. 1891, ch. 108), making the office of sheriff of Erie county a salaried office in part, entitles the sheriff to receive from the county his necessary disbursements in the performance of the county's business.

2. COMPENSATION OF UNDER SHERIFF AND DEPUTIES. The amount reasonably paid by the sheriff as compensation for a necessary under sheriff and deputies is a proper disbursement under the statute, which the board of supervisors is required to audit and allow.

3. REASONABLENESS OF COMPENSATION. On the presentaion for audit, of a claim against the county by the sheriff for the amount paid by him as compensation to an under sheriff and deputies, the board of supervisors should consider whether the appointment of the officers was necessary and whether the amount paid them was reasonable.

*Matter of Beck*, 31 App. Div. 361, reversed.

(Argued October 4, 1898; decided November 22, 1898.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered June 27, 1898, affirming an order of Special Term denying an application for a peremptory writ of mandamus.

The facts, so far as material, are stated in the opinion.

*John Cunneen* for appellant. The orders are erroneous. The disbursements necessarily incurred by the sheriff in discharging duties specified in section 2, chapter 108, Laws 1891, and imposed upon the sheriff by law, should be allowed. (L. 1891, ch. 108, § 10; L. 1892, ch. 686, § 230, subd. 9; *People ex rel.* v. *Suprs. of N. Y.*, 32 N. Y. 476; *People ex rel.* v. *Suprs. of Delaware Co.*, 45 N. Y. 196; *Sargent* v. *LaPlata Co.*, 21 Col. 171; *Lloyd* v. *Board of Comrs.*, 39 Pac. Rep. 457; *U. S.* v. *Flanders*, 112 U. S. 88; *Rhoads* v. *Woods*, 41 Barb. 471; *People ex rel.* v. *Suprs. of Monroe Co.*, 15 How. Pr. 226.) The rule of law " that if the compensation of an officer is not fixed or allowed by statute, his services, if of a

strictly official nature, must be deemed gratuitous," is not so
general in its application as has been assumed below. (Crocker
on Sheriffs, § 1141; *People ex rel.* v. *Common Council of
Buffalo*, 16 Abb. [N. C.] 96; *Kip* v. *City of Buffalo*, 123
N. Y. 152; *Suprs. of Livingston Co.* v. *McCartney*, 26 Barb.
93; *Andrews* v. *U. S.*, 2 Story, 202; 1 Stubb's Const. Hist. of
England, p. 113, citing Cambridgeshire, Domesd. 1, 190;
Impey on Sheriffs, 124; *Flack* v. *State of N. Y.*, 95 N. Y.
464.)

*Spencer Clinton* for respondent. The orders below were
proper and the respondent should not be compelled to audit
the claim of the relator. (L. 1891, ch. 108, p. 268; *Camp-
bell* v. *Cothran*, 56 N. Y. 279, 281; *Crofut* v. *Brandt*, 58 N.
Y. 106, 109, 110, 113; 2 R. S. 1062, §§ 71, 73; Crocker on
Sheriffs, § 21.)

PARKER, Ch. J.    Prior to the passage of chapter 108 of the
Laws of 1891, the sheriff of Erie county, like the sheriffs of
most of the counties in this state, was compensated for his
services, and those of his under sheriff and deputies, by fees
payable by the county, except for services rendered in civil
business, which was paid by or collected from private parties.
As sheriff he was required by statute to appoint an under
sheriff, and authorized to appoint as many deputies as he
deemed proper, not exceeding one for every three thousand
inhabitants.    (1 R. S. 379, §§ 71–73, now found in §§ 181 and
182 of the County Law, L. 1892, ch. 686.)    The powers and
duties of his under sheriff were in some respects on broader lines
than those of the deputies, for he like the sheriff could depute
persons to do particular acts; in the absence of the sheriff he
was required to attend the drawing of juries for the courts of
his county; and if the sheriff was away he was formerly required
to attend upon the execution of a criminal, and in the event of a
vacancy in the office of sheriff, an under sheriff has in all things
the powers of a sheriff until one should be either elected or
appointed.    The amount of compensation of the under sheriff
and deputy sheriffs, as well as the method of paying it, was a

matter of agreement between the sheriff and such officers, whether it should be by way of salary or by allowing to them a portion of the fees to which the sheriff should become entitled for services rendered.

Having noted the relations existing between the sheriff and his deputies as regulated by statute, we come to the statute referred to in the opening sentence. Apparently the view was entertained in the county of Erie that the sheriff's office was unjustifiably profitable, and that a saving could be effected for the county without injustice to the sheriff, and hence was enacted the statute in question, which undertakes to provide that the sheriff shall not receive any fees from the county for his services, but in lieu thereof shall be paid an annual salary, not exceeding five thousand dollars, and have in addition his fees in civil cases and proceedings, and the services of the under sheriff and other employees of his office in such cases and proceedings. This relator entered upon the discharge of his duties as sheriff and appointed an under sheriff, as it was his duty to do under the general statutes of the state, and two deputies whose services he deemed necessary for the proper conduct of his office, and that their services were actually required is not questioned.

He construed the statute to mean that he was bound to make these appointments and was entitled to collect as a disbursement the amount reasonably paid for their services. He deemed a compensation of twenty-five hundred dollars for the under sheriff, and fourteen hundred and fifty dollars each for the deputies as just and reasonable, and agreed to pay them that amount, which he did. For this disbursement he presented his claim to the board of supervisors of Erie county, but it was not allowed, whereupon he instituted this proceeding whereby he sought a writ of mandamus against the board of supervisors requiring it to audit and allow his claim. It is not contended that he paid to these officers more than their services were fairly worth, but mandamus was refused on the ground that as compensation was neither fixed nor allowed by statute, the services of these officers must be deemed to have

been rendered gratuitously, and the court said : "It may be a serious omission of the legislature, but the courts cannot supply it, for their functions are not legislative, but of a judicial character only. The principal and his deputies accepted their positions with knowledge of the defect in the statute, and they must, therefore, perform their duties gratuitously and trust to the justice of future legislatures." This, as well as other portions of the opinion, indicates that it was the judgment of the learned court that the result of its decision was a hardship to the relator, and so it was, for its effect was to require him to pay out of his own pocket the sum of five thousand four hundred dollars, which exceeds the salary paid to him for his services by the sum of four hundred dollars. It seems to me, from a careful examination of the opinion, that the court was led into error by treating the application of relator as one really made in behalf of the under sheriff and the two deputies, whereas in fact the application is one for disbursements incurred by the sheriff in the proper discharge of the duties of his office as he understood them. The inquiry on such application naturally is : (1) Does the statute entitle the sheriff to receive from the county his necessary disbursements in the performance of the county's business ? (2) Is the amount reasonably paid by the sheriff as compensation for a necessary under sheriff and deputies, a proper disbursement under the statute ? (3) Was it necessary for the relator to appoint an under sheriff and two deputies, and was the amount paid them reasonable ? An affirmative answer to all three of these questions would necessarily entitle the relator to receive from the county the sum of five thousand four hundred dollars, the amount paid by him to the under sheriff and his two deputies for their services.

The answer to the first two questions must be found in the statute, so to it we direct our inquiry. The first section provides that after the term of the present incumbent the sheriff shall receive as compensation "for his services" an annual salary, to be paid by the board of supervisors, of not less than four thousand dollars nor more than five thousand dollars per

annum.    Section two of the act reads as follows : " The salary so fixed by said board of supervisors shall constitute the whole compensation which shall be allowed or paid to or received by said sheriff for all the official services performed by him or required to be performed by him as sheriff in his attendance upon any and all courts of record held in the county of Erie and for all services performed by him for the United States, the State of New York, or for the county of Erie, or chargeable thereto or which he is or shall be required or authorized by law to perform by virtue of his office as such sheriff, and no compensation, payment or allowance shall be made to him for his own use for any of such services except the salary aforesaid."

It will be observed that the statute provides that the compensation " so fixed " is for the official services performed by him.    It does not cover disbursements, but is to pay the sheriff for " his services."    Sections three to six of the act provide in effect that all the fees which the United States, or the State, shall pay for services rendered by the sheriff in attendance upon courts, in conveying a prisoner or in discharging other duties, shall belong to the county, and these sections also regulate the manner of receiving and accounting for such fees.

Section ten reads as follows : " The said sheriff shall also be allowed and entitled to receive the necessary and actual disbursements incurred by him in the discharge of the duties designated in section two of this act, or in performing any service for which the county receives, or is entitled to receive the fees therefor under this act which said disbursements shall be audited and allowed by the board of supervisors as other claims against the county are audited and allowed." Here we have a statutory declaration that the sheriff shall be entitled to receive the necessary and actual disbursements incurred by him in the discharge of the duties designated in section two, and that the board of supervisors shall audit the claim made for them as other claims are audited and allowed. The statute, therefore, requires that the first question shall be answered in the affirmative.

In looking through the statute for the answer to the second

question we note, first, that the second section provides that the sheriff shall receive the sum fixed by the board of supervisors in full compensation for all of his services rendered in the discharge of the duties designated therein. He is not to receive the salary for services and necessary expenses and disbursements, but for services alone. Section ten assumes that as sheriff he will necessarily be compelled to incur expense in the discharge of the many and varied duties designated in section two of the act, and accordingly provides that the sheriff " shall also be allowed and entitled to receive " his necessary and actual disbursements. Now the sheriff cannot perform all of the duties enjoined by section two. Aside from the United States courts there are a number of local courts of record, and their proper attendance in a county ranking third in population among the counties of the state requires assistance. And that this was a fact which the legislature recognized is made apparent by other provisions of the statute.

Independently of this statute the sheriff was by a general statute required to appoint an under sheriff, and authorized to appoint necessary deputies, and that this fact was fully appreciated is evidenced by section nine, which provides that " the sheriff shall be entitled, *in addition to the salary above specified*," to the fees which he shall receive in civil causes and proceedings and to " the services of the under sheriff and other employees of his office in such cases and proceedings." Reading this section in connection with section eleven, which will be referred to later, it will be observed that the act referred to the under sheriff and deputies as employees. And the services of such employees the statute declares the sheriff shall have in civil cases and proceedings. The statute, therefore, not only recognizes the necessity of an under sheriff and necessary deputies in a proper discharge of the duties devolved upon the sheriff by section two, but it provides that " *in addition* " to his salary he may have their services in civil matters. Clearly this provision does not contemplate that he shall pay such officers out of his own pocket, and no such intent can be spelled out of it without doing violence to the language

employed. The sheriff is to receive something " in addition " to his salary, viz., fees in civil business and the services of an under sheriff and employees in the conduct of such business, and it need not be argued that if the sheriff pays the under sheriff and deputies out of his salary, he does not receive their services " in addition " to his salary. Section eleven also recognizes the necessity of assistance to the sheriff in the performance of the duties enjoined by section two, and that a salary may be paid to the deputies appointed, for it provides that for the services of a deputy sheriff in attendance upon the courts or in serving warrants there shall be no compensation when he is " a regular employee of the sheriff's department, and under a salary from him or from the county," but he may receive his disbursements, to be audited and allowed by the board of supervisors. The board of supervisors did not employ any under sheriff or deputy sheriffs under the act in question, nor fix the salaries of those appointed by the sheriff. The sheriff was bound to appoint an under sheriff and such number of deputies as the duties devolved upon him by section two required, and such reasonable sum as was necessarily paid by him for their services constituted a proper disbursement under this statute, which the board of supervisors was by it required to audit and allow.

The third question should have been considered by the board of supervisors when the bill was presented for audit, but it is not now before this court

The orders of the Appellate Division and Special Term should be reversed, with costs.

BARTLETT, J. (dissenting). I wish to explain my vote in a few words.

As the court is not advised as to the amount of fees received by the sheriff of Erie county in civil causes and proceedings, in addition to his salary, we are not able to consider the statute of 1891 (Ch. 108) from the standpoint of the legislature, but presumably these fees are large and must have been taken into account in fixing the total compensation.

If the aggregate compensation of the sheriff from salary and fees was deemed sufficient to warrant the legislature in requiring him to pay the salaries of the under sheriff and deputy sheriffs as he had always done, it was only necessary to leave the subject untouched by the act of 1891 to accomplish that result.

If the aggregate compensation was not deemed sufficient, then it is reasonable to suppose that so radical a change as to make these salaries a county charge, either directly or by way of disbursements allowed the sheriff, would have been expressed in apt language.

There is no such provision in the statute, and resort must be had to inference and forced construction to find legislative intention to that effect.

The compensation of the sheriff comes from two sources, public and private, and the act of 1891, dealing with the sheriff of Erie county, turned the public fees into the county treasury and gave the private fees to the sheriff.

The scheme of the statute seems to my mind clear. In lieu of the public fees the sheriff is given a salary of five thousand dollars, which is in full for all his services in those matters out of which the public fees arise, but he is permitted in that connection to collect his actual disbursements. It is also provided that the services of deputy sheriffs in these same matters shall be paid for at the rate allowed by law, except that where the deputy is a regular employee of the sheriff's department and under a salary from him or from the county, he is confined to actual disbursements.

In addition to his salary the sheriff is entitled to the fees in civil causes and proceedings, paid by litigants and individuals, as compensation for his services and disbursements rendered therein, and liabilities thereunder, and the services of the under sheriff and other employees of his office in such cases and proceedings.

It thus appears that the only disbursements allowed to be collected by the sheriff from the county are those he actually incurs in the matters out of which the public fees arise, as

those made in civil causes or proceedings are paid by the litigants or individuals interested.

When we consider that the under sheriff and deputies are occupied to a very great extent in rendering services and incurring disbursements in civil causes and proceedings which are paid for by the parties, I cannot believe that it was the legislative intention to change the old rule in any way, but rather to leave the sheriff to take all the fees and pay his under sheriff and deputies as heretofore.

I vote for affirmance of the order appealed from.

Parker, Ch. J., reads for reversal. Gray, O'Brien and Martin, JJ., concur. Bartlett, J., reads for affirmance, and Haight and Vann, JJ., concur.

Orders reversed and proceedings remitted to the Special Term for further disposition, with costs in all courts.